1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Rhenetta Belcher-Bey,

Plaintiff

v.

City of Las Vegas, Las Vegas Metropolitan Police Department, and Officer Eric Brown,

Defendants

Base Case No.:
2:12-cv-01829-JAD-CWH

Member Case No.:
2:12-cv-01909-JAD-CWH

**Order Granting
Motion for Summary Judgment
[Doc. 38]**

11      These consolidated civil-rights actions arise from the traffic stop of plaintiff Rhenetta

12  Belcher-Bey, who was pulled over by Las Vegas Metropolitan Police Department Officer Eric

13  Brown for driving with fictitious license plates.[1]  Belcher-Bey—who believes she is not bound by

14  Nevada's state laws because she is a citizen of the Mu'ur Republic, a self-proclaimed sovereign

15  nation—was driving a vehicle that bore Mu'ur Republic license plates.  She told the officer she did

16  not have a Nevada driver's license and presented instead her "Moorish nationality ID card," issued

17  by Queen Chief Shugpret.  She was removed from the vehicle, handcuffed, and detained for 20

18  minutes while the officer investigated her identity and then released her.

19      Belcher-Bey sues the LVMPD and Officer Brown alleging an illegal traffic stop and that

20  Officer Brown used excessive force in her detention.[2]  LVMPD and Officer Brown move for

21  summary judgment on all claims.[3]  Belcher-Bey offers only a two-sentence response to this motion

22  and concedes "[t]here is no real issue of fact to be decided at trial."[4]  Having carefully considered the

23

24      [1] *See* Doc. 1 at 10; *see also* Doc. 38 at 10.

25      [2] *See id.* at 10; *see also* Doc. 15 (order to consolidate).

26      [3] Doc. 38.  I find this motion appropriate for resolution without oral argument.  LR 78-2.

27      [4] Doc. 40 at 2.

28

1   record and law, I grant summary judgment in the defendants' favor.

2                                           **Background**

3          Belcher-Bey claims to be an ambassador and public minister in the Moorish Holy Temple of

4   Science of the World.[5]  She subscribes to the mistaken beliefs that (1) she is not required to register

5   her vehicle under state law, display state-issued license plates, or carry her Nevada driver's license

6   because she is not driving in a commercial capacity and the state of Nevada is merely a corporation

7   she has not chosen to contract with; (2) therefore, Nevada's traffic laws do not apply to her (she has

8   only a constitutional obligation to exercise "due care" when driving); and (3) LVMPD officers have

9   no right to enforce the traffic laws against her—only the Sheriff himself may, as "He's the only law

10  in the land."[6]

11         After Belcher-Bey was stopped by LVMPD Officer Brown for driving a vehicle with

12  fictitious license plates, she filed this challenge to the officer's traffic stop and her 20-minute

13  detention, claiming the officer was "impersonating an officer of the court" and a Sheriff,  violated

14  "the principal [sic] of separation of powers," and effectuated a "false arrest" because he "had no

15  first-hand observation of a felony being committed."[7]  She claims that Officer Brown grabbed her

16  arm and twisted her wrist while removing her from her vehicle and placed her in handcuffs, leaving

17  her with bruised her wrists and a sprained wrist, elbow, and shoulder, necessitating an emergency

18  room visit.[8]  Belcher-Bey seeks damages including "$250,000 for denial of proper warrants,

19  $250,000 for slavery (forced compliance to contracts not held), [and] $250,000 for denied provisions

20  _____

21        [5] Doc. 1 at 10; *see also Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d
     241, 272 (D.N.J. 2011) (collecting cases and characterizing this organization as, *inter alia*, an
22   "imaginary creation[]").

23        [6] Doc. 38 at 32–34; *see also* Doc. 1 at 11 (attesting that she "was exercising no privilege that
     must be licensed and registered.").

24        [7] Doc. 1 at 11-12.  In addition, she alleges in her complaint that Officer Brown's citations
25   "violate[] Rule 12(b)(6): lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient
     process, [and] insufficient service of process [and] therefore Brown fails to state a claim upon which
26   relief can be granted." *Id.*  These are misplaced affirmative defenses, not claims appropriate for
     inclusion in a complaint.  *See* Fed. R. Civ. P. 12(b).

27        [8] *Id.* at 12.

28                                              2

1   in the constitution . . . . ."[9]

2         Belcher-Bey freely acknowledges that her vehicle was not registered under Nevada law and

3   was displaying instead a Mu'ur Republic license plate.[10]  Her verified complaint[11] states

4   unequivocally that she told the officer during the stop that she did not have a Nevada driver's

5   license, and she handed him instead her Moorish ID card.[12]  She was cited for fictitious plates,

6   driving an unregistered vehicle, and not possessing a valid driver's license.  Discovery is closed, and

7   Belcher-Bey has produced no authenticated documents to validate her claims of physical injury.

8         LVMPD and Officer Brown argue that Belcher-Bey's many allegations are best distilled into

9   two legal claims: one for an unlawful traffic stop and detention, another for excessive force.[13]  After

10  a careful review, I agree that these legal theories offer the most liberal categorization of Belcher-

11  Bey's claims, and none is sustainable under the undisputed facts in this case.[14]

12                                    **Discussion**

13        Summary judgment is appropriate when the pleadings and admissible evidence "show there

14  is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

15  law."[15]  When considering summary judgment, the court views all facts and draws all inferences in

16

17

18  ─────────────────────

         [9] *Id*. at 13.
19
         [10] *Id.* at 10.
20
         [11] Because the allegations in the complaint are "subscribed, affirmed, [and] acknowledged"
21  by oath before a notary, I treat Belcher-Bey's complaint as a verified one.  *See* Doc. 1 at 13.

22       [12] *Id*. at 10-12.

23       [13] Doc. 38 at 7.

24       [14] I liberally construe all of the plaintiff's pro se motions and pleadings.  *See Bernhardt v.
    L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).  I also note that Belcher-Bey was provided with the
25  notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), *Wyatt v. Terhune*,
    315 F.3d 1108 (9th Cir. 2003), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), even
26  though she is not a prisoner plaintiff.  Doc. 39.

27       [15] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

28                                         3

1  the light most favorable to the nonmoving party.[16]  If reasonable minds could differ on material facts,

2  summary judgment is inappropriate because summary judgment's purpose is to avoid unnecessary

3  trials when the facts are undisputed, and the case must then proceed to the trier of fact.[17]

4      If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of

5  material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts

6  showing that there is a genuine issue for trial."[18]  The nonmoving party "must do more than simply

7  show that there is some metaphysical doubt as to the material facts"; she "must produce specific

8  evidence, through affidavits or admissible discovery material, to show that" there is a sufficient

9  evidentiary basis on which a reasonable fact finder could find in her favor.[19]  Rule 56(e) provides, "If

10  a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the

11  court may: (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary

12  judgment if the motion and supporting materials—including the facts considered undisputed—show

13  that the movant is entitled to it. . . . "

14  **A.    Belcher-Bey Concedes That There Are No Disputed Facts.**

15      Belcher-Bey has not merely failed to address defendants' statement of undisputed facts; she

16  affirmatively responded to it by stating "[t]here is no real issue of fact to be decided at trial."[20]  I thus

17  consider the following facts established by the defendants to be undisputed for purposes of this

18  motion: (1) on August 16, 2012, Belcher-Bey was traveling on Arden Street in Las Vegas, Nevada;

19  (2) she was driving a vehicle that was not registered as required by NRS 482.545(1); (3) Belcher-Bey

20  told Officer Brown she did not have a valid driver's license; (4) the vehicle she was driving bore a

21

22      [16] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

23      [17] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle
24  Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

25      [18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

26      [19] *Orr*, 285 F.3d at 783 (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d
   1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

27      [20] Doc. 40 at 2.

28                                    4

fictitious license plate issued by the Mu'ur Republic, a purportedly sovereign nation that does not recognize the laws of the state of Nevada; (5) Officer Brown asked her to exit the vehicle, and he handcuffed her; (6) Belcher-Bey remained handcuffed for less than 20 minutes, after which she was issued 3 citations and permitted to leave; (7) Belcher-Bey was not taken to jail,[21] and her vehicle was not towed; and (8) during discovery, Belcher-Bey provided no authenticated medical evidence supporting any claim of physical injury during the incident.[22]  I now consider whether, on this evidentiary record, Belcher-Bey can state her constitutional claims.

**B.      The Undisputed Facts Fail to Support Belcher-Bey's Claims.**

The undisputed facts do not rise to the level necessary to establish that Belcher-Bey suffered a constitutional violation.  Even if she could state a constitutional violation on this factual record, the LVMPD is also entitled to summary judgment on her claims against it for the additional reason that there is no evidence that Officer Brown acted pursuant to an official LVMPD policy, practice, or procedure as required by *Monell v. Department of Social Services.*

***1.      Belcher-Bey cannot establish that she was unlawfully stopped.***

Summary judgment is appropriate on Belcher-Bey's Fourth Amendment violation claims based on an allegedly unlawful traffic stop and detention.  In her verified complaint, Belcher-Bey avers that, "just to 'traffic stop' [her]," Officer Brown "turned on his emergency lights" and "impersonated a government official on emergency business."[23]  Because Officer Brown "had no warrant and no first-hand observation of a felony being committed," she contends, he conducted a "false arrest."[24] Belcher-Bey's subjective characterization of Officer Brown's conduct is not supported by the factual record, and the facts she attests to demonstrate that the officer conducted a lawful traffic stop.

---

[21] Defendants offer as another "undisputed fact" that "Plaintiff was not arrested."  *See* Doc. 38 at 6.  This is a legal conclusion, not a fact.

[22] Docs. 38 at 5-6; 40 at 2.

[23] Doc. 1 at 10–11.

[24] Doc. 1 at 11.

5

The Fourth Amendment requires only reasonable suspicion to conduct an investigative traffic stop.[25] "A traffic violation alone is sufficient to establish reasonable suspicion" to validate a traffic stop.[26] Under the rule of *Terry v. Ohio*, an officer may order the driver out of a vehicle during a traffic stop.[27]

Officer Brown plainly had reasonable suspicion that Belcher-Bey was violating Nevada's traffic laws. Nevada law prohibits the operation of an unregistered motor vehicle and the displaying of fictitious license plates.[28] It is also "unlawful for any person to drive a motor vehicle upon a public street or highway in [Nevada] without being the holder of a valid driver's license," and every licensee must have her driver's license in her "immediate possession at all times when driving a motor vehicle."[29] The uncontested evidence in this case demonstrates that Officer Brown pulled Belcher-Bey over because the vehicle she was driving on public roads bore fictitious plates.[30] He then asked her for identification and registration, and she was unable to provide either.[31] Belcher-Bey readily admits that the vehicle was not registered and was displaying her fictitious sovereign-citizen plates from the Mu'ur Republic (which, she attests, were being utilized for "the easy

---

[25] *U.S. v. Choudhry*, 461 F.3d 1097, 1100–01 (9th Cir. 2006).

[26] *Id*. at 1100 (citing *Whren v. United States,* 517 U.S. 806, 810 (1996), and recognizing that even reasonable suspicion of a parking violation can justify an investigatory stop of a vehicle); *see also U.S. v. Duval*, 73 Fed. Appx. 242, 244 (9th Cir. 2003) (finding reasonable suspicion for traffic stop where vehicle had an expired license plate and a crumpled temporary tag affixed with duct tape on the rear window); *U.S. v. Tyndal*, 172 Fed. Appx.741, 742 (9th Cir. 2006) (driving on suspended license deemed sufficient for reasonable suspicion).

[27] *See Maryland v. Wilson*, 519 U.S. 408, 411 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108–109 (1977)).

[28] Nev. Rev. Stat. § 482.545(1) & (2); *see also United States v. Rojas-Millan*, 234 F.3d 464, 469 (9th Cir. 2000) (explaining that "A fictitious license plate does not" satisfy Nevada's registration and license plate laws and holding that fictitious license plates gave rise to "reasonable suspicion of a violation of Nevada law" for valid stop).

[29] Nev. Rev. Stat. §§ 483.350, 483.550(1).

[30] Doc. 38 at 5, 62.

[31] *Id*. at 62; Doc. 1 at 11, lines 4-5.

6

recognition of Nationals of [their] theocratic government to any and all local city, county, state or federal government officials so as NOT to confuse [their] Nationals with corporate UNITED STATES citizens"[32]), and that she told Officer Brown during the stop that she did not have a valid driver's license.[33]  These undisputed facts plainly demonstrate that Officer Brown's traffic stop of Belcher-Bey was constitutionally reasonable as a matter of law.

**2.      The undisputed facts prevent Belcher-Bey from establishing an unconstitutional arrest.**

Officer Brown's investigatory stop did not cross the Fourth Amendment line of reasonableness when he handcuffed Belcher-Bey.  "There is no bright-line rule to determine when an investigatory stop becomes an arrest,"[34] and the Ninth Circuit has recognized that the use of handcuffs "substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop."[35]  Even if I assume for purposes of this motion that Officer Brown's encounter with Belcher-Bey ripened from an investigatory stop into an arrest when he placed her in handcuffs, the totality of the circumstances leads me to the singular conclusion that the arrest was constitutional because it was supported by probable cause.[36]

The United States Supreme Court recognized in *Atwater v. City of Lago Vista* that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."[37]

---

[32] Doc. 1 at 10.

[33] *Id.*

[34] *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996).

[35] *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).

[36] Warrantless arrest requires probable cause.  *See, e.g.*, *Whiteley v. Warden*, 401 U.S. 560, 564-66 (1971).

[37] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). *See also Virginia v. Moore*, 553 U.S. 164, 176 (2008) (finding arrest for driving on a suspended license constitutionally reasonable despite state law prohibiting arrest for this offense and reasoning "that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that

1    The High Court found that the arrest of Atwater for neither wearing her seatbelt nor ensuring that her

2    children wore theirs "satisfied constitutional requirements" because the officer "had probable cause

3    to believe that Atwater had committed a crime in his presence."[38]  The Court noted that the officer

4    was "not required, but [was] authorized" to make that custodial arrest even without "determining

5    whether or not Atwater's arrest was in some way necessary."[39]

6            Officer Brown was similarly authorized, but not required, to arrest Belcher-Bey.  She

7    concedes that she was driving a vehicle with a fictitious license plate and no registration, and that she

8    told Officer Brown at least twice that she did not have a Nevada driver's license.  Each of these

9    offenses was an independent misdemeanor under Nevada law, and the commission of each of these

10   offenses in Officer Brown's presence gave him probable cause to effect a custodial arrest of Belcher-

11   Bey.[40]  This conclusion is also consistent with the Ninth Circuit's rulings in *United States v. Smith*

12   and *United States v. Mayo* that expired or false vehicle registration can give rise to probable cause

13   for arrest during traffic stops.[41]

14

15

16   _____

17   while States are free to regulate such arrests however they desire, state restrictions do not alter the
     Fourth Amendment's protections.").

18

19       [38] *Id*.

20       [39] *Id*.

21       [40] Nev. Rev. Stat. §§ 482.555(1)(b), 483.620.  *See also* Nev. Rev. Stat. § 484A.730 (giving
     discretion to cite or arrest for traffic violations); Nev. Rev. Stat. § 171.124 (authorizing peace officer
22   to make an arrest for a public offense committed or attempted in the officer's presence).  NRS
     484A.730(1) additionally authorizes peace officers to effect a custodial arrest for failure to provide
23   satisfactory proof of identity, as Belcher-Bey did when she failed to produce a Nevada driver's
     license.  *See also Morgan v. State*, 88 P.3d 837, 839 (Nev. 2004) (finding lawful arrest for
24   misdemeanor traffic offense); *cf. Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (suggesting, "if a police
     officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting
25   him rather than merely issuing a citation.").

26       [41] *United States v. Smith*, 148 F. App'x 615, 616 (9th Cir. 2005) ("The invalid registration
     gave the officers a basis to arrest Smith independent of his status as an unlicensed driver."); *United*
27   *States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005) (stolen registration sticker on license plate gave
     officers probable cause for arrest).

28                                                    8

1

2

### 3.     The undisputed facts fall short of demonstrating Officer Brown used excessive force.

3      Nor do the undisputed facts of this case support a § 1983 claim for excessive force.  The

4 Fourth Amendment prohibits police use of force that "is excessive under objective standards of

5 reasonableness."[42]  "The reasonableness of a particular use of force must be judged from the

6 perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[43]

7 Handcuffing is typically constitutional unless the handcuffs cause injury or the arresting officer

8 ignores complaints of discomfort.[44]  The Ninth Circuit has recognized that merely claiming that pain

9 and injury resulted from handcuffing, without authenticated medical records to support that claim, is

10 not enough to demonstrate a genuine issue of fact to prevent summary judgment on an excessive-

11 force claim.[45]

12      Belcher-Bey avers that Officer Brown grabbed her hand, twisted her wrist, and pulled on her

13 arm while demanding she exit her vehicle, causing her to suffer pain in her writs, elbow, and

14 shoulder.[46]  She was then handcuffed and forced to sit down on the curb.[47]  When she complained that

15 she was sitting on an ant hill, Brown "gave her permission to stand," and when she "had difficulty

16 standing," she claims "Brown grabbed [her] left arm and pulled her to her feet, causing severe pain in

17

18

19

---

20      [42] *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *Fontana v. Haskin*, 262 F.3d 871, 879 (9th
Cir. 2001) (quoting *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir.
21 2000), *cert. granted and judgment vacated on other grounds*, 534 U.S. 801 (2001)) (internal
quotation marks omitted).

22

      [43] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (quoting
23 *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

24      [44] *C.B. v. City of Sonora*, 730 F.3d 816, 826 (9th Cir. 2013).

25      [45] *Arpin*, 261 F.3d at 922.

26      [46] Doc. 1 at 11.

27      [47] *Id.*; Doc. 38 at 37.

28
                                                    9

---

[her] shoulder, elbow and wrists."[48]  She remained handcuffed for less than 20 minutes.[49]  Belcher-Bey does not dispute that, during discovery, she provided no admissible medical evidence to corroborate her claims of physical injury.[50]

Though they demonstrate that Officer Brown used some force, the facts of Belcher-Bey's encounter with Officer Brown do not rise to the level of excessive force necessary to state a § 1983 claim for violation of a constitutional right.  As the United States Supreme Court recognized in *Graham v. Connor*, "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."[51]  Belcher-Bey's experience is similar to—if not less forceful than—the one examined by the Eighth Circuit Court of Appeals in *Foster v. Metropolitan Airports Commission*.  Foster was arrested after he refused to move his car from the Minneapolis/St. Paul International Airport unloading zone.  He claimed he was pulled from his car, handcuffed, pushed against a wall twice on the way to the detention area, and remained in handcuffs for two hours while the officers ran a warrant and identification check.[52]  He testified that the too-tight handcuffs were both unnecessary and caused nerve damage in his arms, but he offered no medical records to corroborate his injury claim.[53]  The district court granted summary judgment against Foster and the circuit court affirmed, reasoning:

> We do not believe that Foster's allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force . . .  Although in hindsight such force might not have been necessary, we are not here to judge the officer's conduct from hindsight, but rather to place

---

[48] Doc. 1 at 11.

[49] Doc. 38 at 6 (undisputed fact #6).

[50] *Id*. (undisputed fact #11).

[51] *Graham v. Connor*, 490 U.S. 386, 396 (quoting *Johnson v. Glick*, 481 U.S. 1028, 1033 (1973)).

[52] *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1078 (1990).

[53] *Id.* at 1082.

10

1  ourselves in the shoes of a reasonable officer under the circumstances.[54]

2       The Ninth Circuit followed *Foster* in *Arpin v. Santa Clara Transportation Agency* and upheld

3  a district court's order granting summary judgment against the plaintiff on an excessive-force claim

4  arising from her contention that an officer "handcuffed [her], twisting [her] left arm behind her with

5  enough force to lift her off the ground and break her watch band."[55]   The panel reasoned that Arpin

6  did not sustain her summary-judgment burden because she offered no proof of actual injury:

7  > Arpin's conclusory allegations unsupported by factual data are insufficient to defeat
> the County Defendants' summary judgment motion.  Arpin's claim of injury is equally
8  > unsupported as she does not provide any medical records to support her claim that she
> suffered injury as a result of being handcuffed.  Because Arpin failed to meet her
9  > burden of proof of providing specific facts to show that the force used was
> unreasonable or that she sustained actual injuries, the district court did not err in
10 > granting summary judgment to the County Defendants on Arpin's claim of
> unreasonable force.[56]

11

12      Belcher-Bey's alleged injuries are consistent with those claimed by Foster and Arpin,

13 and—like those unsuccessful excessive-force claimants—she lacks admissible medical records or

14 other evidence to demonstrate that she sustained actual or more permanent injuries that might

15 approach the level necessary to state a constitutional violation.  Accordingly, Belcher-Bey has failed

16 to meet her burden of proof of providing specific facts to show that the force Officer Brown used was

17 unreasonable or excessive.  Defendants are also entitled to summary judgment in their favor on her

18 excessive force claim.[57]

19 **C.    LVMPD Is Also Entitled to Summary Judgment Because There Is No Evidence That
       Brown's Challenged Conduct Was the Result of a Municipal Policy, Practice, or**
20     **Custom.**

21      Finally, the LVMPD is entitled to summary judgment on Belcher-Bey's claims against it for

22

---

23      [54] *Id*. at 1082–83.

24      [55] *Arpin*, 261 F.3d at 918.

25      [56] *Id*. at 922.

26      [57] Because I grant summary judgment based on the undisputed facts and plaintiff's failure to
   satisfy her summary-judgment burden, I do not reach Brown's separate, three-sentence, conclusory
27  argument that he is entitled to qualified immunity.  *See* Doc. 38 at 13, lines 14-17.

28                                                    11

the separate and independent reason that there is no evidence to support a municipal-liability claim against the department for Officer Brown's actions.  Because there is no respondeat superior liability under § 1983, in *Monell v. New York City Department of Social Services*, the United States Supreme Court "held that civil rights plaintiffs suing a municipal entity" like the police department under § 1983 "must show that their injury was caused by a municipal policy or custom."[58]  In short, *Monell* recognizes that "'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor,'" but  it "may be held liable 'when execution of a government's policy or custom inflicts the injury.'"[59]  The policy or custom must be the moving force behind the alleged constitutional violation.[60]

Belcher-Bey never alleges—let alone points to any evidence that demonstrates—that any LVMPD policy, practice, or custom inflicted the injuries she claims.[61]  Thus, to the extent that she intended to state her claims against LVMPD, the evidence plainly fails to support any municipal-liability theory, and summary judgment on all claims against LVMPD is warranted.

### Conclusion

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that defendants Las Vegas Metropolitan Police Department and Eric Brown's motion for summary judgment **[Doc. 38]** is **GRANTED**.  **Judgment is entered in favor of the defendants and against Belcher-Bey.**

Because the entry of judgment on Belcher-Bey's claims terminates this suit, the Clerk of Court is instructed to **CLOSE** this case and consolidated case 2:12-cv-1909-JAD-CWH.

DATED March 20, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[58] *L.A. Cnty., Cal. v. Humphries*, 562 U.S. 29, 30 (2010) (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978)).

[59] *Humphries*, 562 U.S. at 36 (quoting *Monell*, 436 U.S. at 691, 694).

[60] *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008).

[61] *See generally* Doc. 1 at 9–13.